**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable William J. Martínez**

Civil Action No. 20-cv-3204-WJM

RUSSELL M. BOLES,

      Applicant,

v.

JEFF LONG, S.C.F., and
PHILLIP WEISER, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      Applicant, Russell M. Boles, is a prisoner in the custody of the Colorado

Department of Corrections. Mr. Boles has filed *pro se* an Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application")

challenging the validity of his conviction and sentence in Jefferson County District Court

case number 2015CR2447. Respondents have filed an Answer (ECF No. 24) and Mr.

Boles has filed a Reply (ECF No. 31).

      After reviewing the record, including the Application, the Answer, the Reply, and

the state court record, the Court concludes Mr. Boles is not entitled to relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      The Colorado Court of Appeals on direct appeal summarized the background of

Mr. Boles' case as follows:

> Defendant and the victim both leased separate
> garage spaces on the same property. Defendant also parked
> his RV there. On the night of the incident, the victim went to

check on an AC unit attached to the garage. Without warning, defendant came up behind the victim and shot him in the leg before retreating into his RV.

When law enforcement arrived, defendant refused to leave the RV, resulting in a nearly five-hour standoff with police and SWAT.

The prosecution charged defendant with first degree assault and failure to leave premises under section 18-9-119, C.R.S. 2018.

At trial, defendant represented himself and chose not to testify after the trial court advised him that if he chose to testify, the prosecution could cross-examine him on prior felony convictions.

Defendant's theory of defense was that he shot the victim in self-defense and in defense of his property. In attempting to prove his theory, defendant sought to introduce evidence of the victim's prior misdemeanor convictions. He also requested that security camera recordings in the area be preserved. No such recordings were available at trial.

(ECF No. 9-3 at pp.2-3.) Mr. Boles was convicted as charged and sentenced to twenty-four years in prison. The judgment of conviction was affirmed on appeal. (*See id.*) On November 4, 2019, the Colorado Court of Appeals denied Mr. Boles' petition for writ of certiorari. (*See* ECF No. 9-4.)

Mr. Boles asserts five claims in the Application. He contends in claim one that his Sixth Amendment right to counsel was violated because the trial court forced him to represent himself and then interfered with his ability to do so. Claim two is a due process claim in which Mr. Boles challenges certain jury instructions. Mr. Boles contends in claim three that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He contends in claim four that his

Fourth Amendment rights were violated when he was arrested without a warrant. Finally, claim five is a cumulative error claim. Additional facts pertinent to each claim are set forth below.

## II. STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Boles liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Boles bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not

come accompanied with those reasons, . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Boles seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The
> word 'contrary' is commonly understood to mean
> 'diametrically different,' 'opposite in character or nature,' or
> 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct.
> 1495 (citation omitted).

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity. The more general
> the rule, the more leeway courts have in reaching outcomes

> in case-by-case determinations. [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted, brackets in original). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court

presumes the state court's factual determinations are correct and Mr. Boles bears the

burden of rebutting the presumption by clear and convincing evidence. The presumption

of correctness applies to factual findings of the trial court as well as state appellate

courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption

of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d

1064, 1071 n.2 (10th Cir. 2017).

Finally, the Court's analysis is not complete even if Mr. Boles demonstrates the

state court decision is contrary to or an unreasonable application of clearly established

federal law or was based on an unreasonable determination of the facts in light of the

evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019), *cert.*

*denied*, 141 S. Ct. 294 (2020). If the requisite showing under § 2254(d) is made, the

Court must consider the merits of the constitutional claim *de novo. See id.* at 1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not

adjudicated on the merits in state court, the Court still must presume the state court's

factual findings pertinent to the claim are correct under § 2254(e). *See id.*

## III. MERITS OF APPLICANT'S CLAIMS

### A. Claim One

Mr. Boles contends in claim one that his Sixth Amendment right to counsel was

violated because the trial court forced him to represent himself and then interfered with

his ability to do so. Mr. Boles alleges he was forced to represent himself because the

trial court determined there was no conflict of interest with his public defender and refused to appoint a new public defender or alternate defense counsel even though his relationship with his public defender was "contemptuous" and they could not get along with each other. Mr. Boles specifically alleges his public defender refused to request video evidence, investigate the scene, interview witnesses, share discovery, or allow him to participate in his defense. Mr. Boles also alleges that, after he opted to represent himself, the trial court interfered with his ability to do so by: excluding "antecedent intrinsic evidence" that provided context and explained his actions on the night in question in support of his self-defense theory; refusing to grant a continuance or do anything about jail conditions that deprived him of food, adequate medical care, and legal materials; forcing him to take medication that left him in a "mental fog"; constructively blocking him from participating in selecting jury instructions; and refusing to approve sufficient funds for his investigator.

Mr. Boles raised a Sixth Amendment claim on direct appeal. The Colorado Court of Appeals rejected the claim because Mr. Boles failed to provide an adequate record. The state court explained as follows:

> Defendant next argues that the trial court erred by finding that there was no conflict of interest with the public defender requiring appointment of alternate defense counsel, and, as a result, he was erroneously denied counsel.

> The defendant bears the burden of providing the reviewing court with an adequate record that sets forth his or her appellate claims' factual underpinnings. *See People v. Rodriguez*, 914 P.2d 230, 260 (Colo. 1996).

Here, however, defendant has not provided a
complete trial record to permit our review of the trial court's
determination that no conflict of interest existed. Absent an
adequate record, we presume the trial court's findings and
conclusions are correct and will not disturb them on review.
*Till v. People*, 196 Colo. 126, 127, 581 P.2d 299, 299 (1978).

(ECF No. 9-3 at pp.14-15 (footnote omitted).)

Respondents argue claim one is defaulted because Mr. Boles failed to comply

with an independent and adequate state procedural rule requiring him to provide an

adequate record on appeal. Mr. Boles counters that he requested and ordered all

relevant transcripts. However, the Court presumes the state court's factual finding

regarding the completeness of the trial record is correct and Mr. Boles fails to rebut that

presumption with clear and convincing evidence otherwise. *See* 28 U.S.C. § 2254(e)(1).

Therefore, the Court agrees with Respondents that claim one is procedurally defaulted.

Federal courts "do not review issues that have been defaulted in state court on

an independent and adequate state procedural ground, unless the default is excused

through a showing of cause and actual prejudice or a fundamental miscarriage of

justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). "A state procedural

ground is independent if it relies on state law, rather than federal law, as the basis for

the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural

ground is adequate if it "was firmly established and regularly followed." *Beard v. Kindler*,

558 U.S. 53, 60 (2009) (internal quotation marks omitted).

Mr. Boles bears the burden of demonstrating the rule identified by the Colorado

Court of Appeals is not an independent and adequate state procedural rule. *See*

*Fairchild v. Workman*, 579 F.3d 1134, 1143 (10th Cir. 2009). He fails to do so. It is clear that the rule relies on Colorado state law. The rule also is firmly established and regularly followed by Colorado's appellate courts. *See People v. Ullery,* 984 P.2d 586, 591 (Colo. 1999); *People v. Wells,* 776 P.2d 386, 390 (Colo. 1989); *People v. Velarde*, 616 P.2d 104, 105 (Colo. 1980); *Till v. People*, 581 P.2d 299, 300 (Colo. 1978); *People v. Duran*, 382 P.3d 1237, 1239 (Colo. App. 2015); *In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004). Therefore, the Sixth Amendment claim is procedurally defaulted and cannot be considered unless Mr. Boles demonstrates either cause and prejudice or a fundamental miscarriage of justice. *See Jackson*, 143 F.3d at 1317. Mr. Boles' *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Mr. Boles must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). If Mr. Boles can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Mr. Boles contends he can overcome the procedural default of claim one

because the trial court interfered with his ability to provide an adequate record.

According to Mr. Boles:

> When I notified the trial court of my appeal, Judge Tighe sent me a letter saying I should limit the amount of record I requested to what was essential because the clerk-reporter that worked through 99% of my hearings and trial had abruptly quit, moved to another state, and was not interested in doing my transcripts. The letter said a reporter from another division was solicited to make my transcripts in her spare time. So if I requested very much, it would take a very long time to get them. As it was it took three 90 day extensions of time to get just what I requested. This semi-suppression of information could be considered a contributing factor to default.
>
> Another contributing factor was the Appeals Court itself. If they had read the record I provided the[y] would not have made the ruling they did. Part of it was in a hearing for an Alternate Defense Counsel I had requested. The part about Judge Tighe's interference is laced throughout the record. The[y] did not read it. They simply recapitulated the State Attorney's view. So you have cause and prejudice.

(ECF No. 11 at p.6.)

Mr. Boles' allegation that the trial judge advised him to limit the record on appeal to only what was essential does not demonstrate interference by a state official that made compliance with the procedural rule impracticable. Mr. Boles does not demonstrate or even allege that he was directed not to request the transcripts necessary to permit review of his Sixth Amendment claim or that he was prevented from requesting and providing those transcripts. He alleges only that the trial judge suggested he limit his request to the essential transcripts and Mr. Boles failed to do so. His concern over the time required to prepare the record also does not demonstrate

compliance with the procedural rule was impracticable. Finally, Mr. Boles' assertion that the Sixth Amendment violation should have been apparent to the state appellate court based on the record he provided also does not demonstrate cause for the procedural default.

Mr. Boles also fails to demonstrate the existence of a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. A credible claim of actual innocence requires Mr. Boles "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Mr. Boles then "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327)). "The *Schlup* standard is demanding and permits review only in the extraordinary case." *Id.* at 538 (internal quotation marks omitted). Mr. Boles does not present any new evidence to support an actual innocence argument.

For these reasons, the Court concludes claim one is procedurally barred.

Claim one also fails on the merits. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant

to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963). With respect to the issue of substitute counsel, a criminal defendant has a constitutional right to representation by counsel that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

The Supreme Court has recognized at least the possibility of a conflict of interest between a criminal defendant and his or her attorney in various circumstances. *See*, *e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 164-65 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); *Wood v. Georgia*, 450 U.S. 261, 270-72 (1981) (suggesting strong "possibility of a conflict of interest " when defendants were represented by a lawyer hired by their employer); *Cuyler*, 446 U.S. at 348 ("Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial.") However, there is no Sixth Amendment right to substitute counsel in the absence of an actual conflict of interest. *See Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) ("Plumlee has cited no Supreme Court case – and we are not aware of any – that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust.").

Mr. Boles fails to demonstrate an actual conflict of interest with his public defender that required appointment of substitute counsel. The Supreme Court has made it clear that the Sixth Amendment does not guarantee "a 'meaningful relationship'

between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Mr.

Boles' specific allegations that his public defender refused to request video evidence,

investigate the scene, interview witnesses, share discovery, or allow him to participate

in his defense demonstrate only that he disagreed with his public defender about

defense strategy. But a disagreement with counsel about defense strategy does not

require substitution of counsel. *See United States v. Lott*, 310 F.3d 1231, 1249 (10th

Cir. 2002).

To the extent Mr. Boles also is challenging the voluntariness of his waiver of

counsel by arguing he was effectively compelled to proceed *pro se*, he again fails to

demonstrate he is entitled to relief. A defendant in a criminal proceeding has a

constitutional right to waive his right to counsel and to represent himself. *Faretta v.

California*, 422 U.S. 806, 819-20 (1975). A waiver may take the form of an express

statement relinquishing the right to counsel or, under certain circumstances, a waiver

can be implied from the facts of the case. *See North Carolina v. Butler*, 441 U.S. 369

(1979). In order to be effective, a waiver of counsel must be knowing, voluntary, and

intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Whether a waiver is knowing, voluntary, and intelligent "depends in each case

upon the particular facts and circumstances surrounding that case, including the

background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S.

477, 482 (1981) (internal quotation marks omitted). In the context of a criminal

proceeding that goes to trial, warnings regarding the pitfalls of proceeding without

counsel must be rigorously conveyed. *See Patterson v. Illinois*, 487 U.S. 285, 299

(1988). Mr. Boles bears the burden of proving that he did not competently and intelligently waive his right to the assistance of counsel. *See Tovar*, 541 U.S. at 92.

The Court's review of the state court record demonstrates Mr. Boles made a knowing, voluntary, and intelligent waiver of his right to counsel. He requested to proceed *pro se* after the trial court determined there was no conflict with the public defender, he was questioned extensively about his desire to proceed *pro se*, he was thoroughly warned about the potential pitfalls of proceeding without counsel, and the trial court determined his waiver was knowing, voluntary, and intelligent. The issue of proceeding *pro se* arose again after private counsel hired by Mr. Boles moved to withdraw and he again waived his right to be represented by counsel. Therefore, any claim that Mr. Boles may be asserting challenging his waiver of counsel lacks merit.

Finally, Mr. Boles fails to demonstrate he is entitled to relief with respect to his vague and conclusory allegations that the trial court interfered with his ability to represent himself. For example, Mr. Boles fails to allege specific facts regarding the conditions of his pretrial confinement and how those conditions actually prejudiced his ability to prepare a defense. Similarly, although Mr. Boles alleges the trial court would not approve sufficient funds for his investigator, he does not allege what additional funds would have accomplished, referring instead only to "evidence he might have discovered." (ECF No. 31 at p.28.) Mr. Boles' allegations about evidentiary rulings also do not demonstrate unconstitutional interference with his ability to represent himself.

For these reasons, the Court finds that Mr. Boles is not entitled to relief with respect to claim one.

**B. Claim Two**

Claim two is a due process claim in which Mr. Boles challenges certain jury instructions. He specifically references the instructions on reasonable doubt, specific intent, and self-defense, although he does not explain clearly in the Application why he believes the instructions were defective. In his Reply Mr. Boles argues the jury instructions prevented the jury from considering relevant evidence and relieved the prosecution from their burden of proving every element of the crimes charged beyond a reasonable doubt. According to Mr. Boles: there was no specific intent instruction in instructions 13 and 14, which allowed the jury to convict on a lesser degree of proof than required by law; instruction 16 left out part of the defense theory (that Mr. Boles caught the victim in an act of criminal tampering); instruction 17 "seems to have something missing in light of everything else, like burden of proof; who bears it?" (ECF No. 31 at p.12); the trial court would not allow an affirmative defense instruction for the failure to leave premises charge; the instruction on self-defense left out that actual danger is not required and that "apparent necessity" justifies self-defense; and instruction 4, the pattern instruction on reasonable doubt, was too weak because "[t]he jury needs to reach a subjective state of near certitude of guilt, or there is reasonable doubt" (ECF No. 31 at p.13).

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Thus, a constitutional challenge to jury instructions requires a habeas petitioner to show a reasonable likelihood that the jury applied the instructions in

a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt. *See Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009); s*ee also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (the pertinent constitutional question "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."). "[I]t is not enough that there is some 'slight possibility' that the jury misapplied the instruction." *Waddington*, 555 U.S. at 191 (quoting *Weeks v. Angelone*, 528 U.S. 225, 236 (2000)). Furthermore, a challenged instruction may not be considered in artificial isolation; rather, it must be considered in the context of the instructions as a whole and the trial record. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

The Colorado Court of Appeals rejected Mr. Boles' claim regarding the jury instructions and explained its reasoning as follows:

> Next, we disagree with defendant that he is entitled to a new trial based on errors in the trial court's jury instructions.
>
> We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. *People v. Reeves*, 252 P.3d 1137, 1139 (Colo. App. 2010).
>
> "The trial court has broad discretion to formulate jury instructions as long as they are correct statements of the law." *People v. Oram*, 217 P.3d 883, 893 (Colo. App. 2009), *aff'd*, 255 P.3d 1032 (Colo. 2011).
>
> Where a defendant's instructional argument is unpreserved, we review for plain error. *People v. Miller*, 113 P.3d 743, 750-51 (Colo. 2005) (holding that the defendant must demonstrate not only that the jury instruction affected a substantial right, but also that the record reveals a

reasonable possibility that the error contributed to his conviction).

For the following reasons, we conclude that the trial court properly declined to give these requested jury instructions:

> 1. "Defendant as Victim or Incidental Actor." Defendant was not charged with an offense that would have held him criminally liable for the conduct of another. *See* COLJI-Crim. H:06 cmt.3 (2015). Therefore, this instruction was not appropriate.

> 2. "No Duty to Retreat." The pattern instruction given to the jury included the language that "[t]he defendant was legally authorized to use physical force upon another person without first retreating if" particular conditions were met. Because the jury was already instructed on "no duty to retreat," defendant was not entitled to an additional instruction.

> 3. "Criminal Tampering." Defendant was not charged with criminal tampering, and criminal tampering was not an element of any charged offense. *See People v. Silva*, 987 P.2d 909, 913 (Colo. App. 1999) ("[T]he court should not instruct on an abstract principle of law unrelated to issues in controversy."). Accordingly, the court declined to instruct on this offense.

For the first time on appeal, defendant also alleges the following instructional errors:

> • Jury Instruction 1 improperly ruled out jury nullification.

> • Jury Instruction 4 incorrectly defined reasonable doubt.

> • Jury Instruction 8 improperly emphasized defendant's decision not to testify.

• Jury Instruction 12 improperly condoned hearsay.

• Jury Instructions 13 and 14 (listing the elements for first degree assault and the lesser included offense of second degree assault) implied a "lesser degree of intent than that statute requires."

• The language of Jury Instructions 15, 16, and 17 was incorrect.

Defendant did not challenge these instructions at trial. *See Miller*, 113 P.3d at 748, 751 (holding that if a defendant does not object to an instruction given to a jury, it is reviewed for plain error). Because they are pattern jury instructions that accurately track the statutory language and correctly state the law, we will not reverse. *See Reeves*, 252 P.3d at 1141.

(ECF No. 9-3 at pp.11-14.)

Mr. Boles is not entitled to relief on claim two under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Mr. Boles does cite *Estelle* for the proposition that the jury instructions must be considered in the context of the trial as a whole, but *Estelle* does not compel a different result because the Colorado Court of Appeals recognized that it must consider the jury instructions "as a whole." (ECF No. 9-3 at p.11.)

Next, Mr. Boles fails to demonstrate the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). He apparently takes issue with the Colorado Court of Appeals' factual

determination that certain instructions were challenged for the first time on appeal, but he fails to present clear and convincing evidence to overcome the presumption that the state court's factual determination is correct. *See* 28 U.S.C. § 2254(e)(1). In any event, the Colorado Court of Appeals considered the challenges raised for the first time on appeal for plain error and Mr. Boles does not demonstrate or argue that a different standard of review would have led to a different result.

Finally, Mr. Boles fails to demonstrate the state court's rejection of claim two "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. He apparently contends the state court improperly considered the instructions in isolation and accepted them solely because they were pattern instructions, but he offers only speculation that the jury may have misapplied the instructions. Such speculation, without more, is not enough to demonstrate a constitutional violation. *See Weeks*, 528 U.S. at 236. As a result, Mr. Boles fails to demonstrate a reasonable likelihood that the jury applied any instructions in a way that relieved the prosecution of its burden of proving every element beyond a reasonable doubt. *See Waddington*, 555 U.S. at 190-91; *Victor*, 511 U.S. at 6.

For these reasons, Mr. Boles is not entitled to relief with respect to claim two.

**C. Claim Three**

Mr. Boles contends in claim three that the prosecution failed to disclose exculpatory evidence. He primarily contends in support of this claim that Lakewood police officers negligently failed to obtain video footage from a security camera that was

directly above the location of the shooting that would have verified his version of events. Mr. Boles also alleges in claim three that text messages he sent to a police officer during a conversation while he was in his recreational vehicle after shooting the victim were not preserved, but he concedes that there was testimony about his side of the conversation during cross-examination and in response to a jury question. Finally, Mr. Boles contends in claim three that the prosecution likely "contrived a conviction through preten[s]e and testimony known to be perjured to cover up the alleged victim's illegal enterprise and the deal made to not prosecute him in exchange for his testimony against me." (ECF No. 1 at pp.15-16.)

The Colorado Court of Appeals rejected this claim for the following reasons:

> We further reject defendant's contention that the prosecution failed to comply with its discovery obligations under Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose alleged exculpatory evidence, including false testimony of the victim, text messages, and security camera footage from a nearby building.
>
> As an initial matter, we note that this issue was unpreserved at trial. Although the trial court granted defendant's pretrial discovery motion to preserve evidence, defendant did not ask the trial court to make a ruling as to whether the prosecution failed to comply with that motion. Therefore, we review for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14 (holding that we reverse under plain error only if the error is so obvious and substantial as to undermine the fundamental fairness of the trial so as to cast doubt on the reliability of the judgment of conviction).
>
> After review of the record, we discern no error in the court's failure to inquire as to whether the prosecution complied with its discovery order.

Moreover, even assuming error occurred, it would not have been so obvious to the court as to constitute plain error, because the prosecution investigated and attempted to preserve the evidence. Specifically, at trial both owners of the property where the security cameras were placed testified that law enforcement officers reviewed the recordings immediately following the incident. The property owners stated that the cameras were pointed away from the incident and that nothing was seen in the recordings. When law enforcement returned to obtain copies of the recordings following defendant's motion to preserve evidence, the recordings had been copied over in compliance with the owners' policies. Furthermore, defendant cross-examined the owners of the property.

Further, defendant's contentions that the prosecution was required to disclose deals and promises made to the victim as well as text messages between the officers responding to the incident are conclusory and unsupported by the record. *People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development . . . .").

Accordingly, we discern no error, let alone plain error, in the trial court's failure to sua sponte conclude that the prosecution committed discovery violations or failed to comply with the court's discovery order.

(ECF No. 9-3 at pp.9-11.)

Suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The *Brady* rule encompasses evidence "known only to police investigators and not to

the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). "Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'" *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (per curiam) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (quotation marks omitted). A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434 (quotation marks omitted). The Court must evaluate whether undisclosed evidence is material in the context of the entire record. *See United States v. Agurs*, 427 U.S. 97, 112 (1976). The burden is on Mr. Boles to demonstrate the existence of a *Brady* violation by a preponderance of the evidence. *See United States v. Garcia*, 793 F.3d 1194, 1205 (10th Cir. 2015).

Claim three consists of three distinct elements: the video camera footage, the text messages, and the victim's allegedly perjured testimony. With respect to the video camera footage that allegedly was not recovered and the text messages that allegedly were not preserved, those elements of claim three properly are considered under *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). In *Trombetta*, the Supreme Court noted that, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. Thus, a due process violation occurs when the state fails to preserve or

destroys evidence that has "an exculpatory value that was apparent before the evidence was destroyed" and was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. In *Youngblood*, the Supreme Court clarified that the Due Process Clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Instead, if the evidence is only potentially useful, i.e., "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," there is no due process violation unless the defendant proves the state acted in bad faith in destroying or failing to preserve the evidence. *Id.* at 57-58. The Supreme Court specifically noted that "the police do not have a constitutional duty to perform any particular tests" and "the Due Process Clause is [not] violated when the police fail to use a particular investigatory tool." *Id.* at 59. With respect to the victim's allegedly perjured testimony, the knowing use of perjured testimony violates due process and can be categorized as a *Brady* violation. *See Douglas*, 560 F.3d at 1172-74 & n.13; *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." (internal quotation marks omitted)).

Mr. Boles is not entitled to relief on claim two under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Next, Mr. Boles fails to demonstrate the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). He does allege with respect to the video camera footage that the state court referenced the wrong cameras, but he fails to present clear and convincing evidence to overcome the presumption that the state court's factual determination is correct. *See* 28 U.S.C. § 2254(e)(1). Thus, the Court must presume there was no video camera footage of the incident.

Finally, Mr. Boles fails to demonstrate the state court's rejection of the alleged *Brady* violations in claim three "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Mr. Boles argues strenuously that the trial court improperly limited the evidence he could introduce and his cross-examination of the victim, which allegedly prevented him from presenting his theory of defense, but there is a difference between the argument that he was prevented from disclosing evidence to the jury and a claim under *Brady* that the prosecution failed to disclose exculpatory evidence to the defense. With regard to the asserted *Brady* violation, Mr. Boles fails to demonstrate there was any material video camera footage, he concedes there was testimony about the text message conversation and he certainly was aware of the content of the text messages he sent, and he fails to identify any perjured testimony. Thus, Mr. Boles does not demonstrate the state court unreasonably determined there was no *Brady* violation.

For these reasons, Mr. Boles is not entitled to relief with respect to claim three.

**D. Claim Four**

Mr. Boles contends in claim four that his Fourth Amendment rights were violated when he was arrested without a warrant and he specifically takes issue with the trial court's determination that he was not arrested until he exited his recreational vehicle following the five-hour standoff. According to Mr. Boles, he was arrested when the police surrounded the recreational vehicle and ordered him to come out and the trial judge ruled otherwise because he "was motivated by a desire to rescue a lady prosecutor that was lo[]sing the battle on the issue." (ECF No. 1 at p.16.)

Respondents argue that claim four must be dismissed pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992). A full and fair opportunity to litigate a Fourth Amendment claim in state court includes the procedural opportunity to litigate the claim as well as a full and fair evidentiary hearing. *See Miranda*, 967 F.2d at 401. A full and fair opportunity to litigate also "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). It is Mr. Boles' burden to demonstrate he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Young v. Conway*, 715 F.3d 79, 92 (2d Cir. 2013) (Raggi, Circuit J., dissenting from denial of reh'g en banc); *Peoples v.*

*Campbell*, 377 F.3d 1208, 1224 (11th Cir. 2004); *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001); *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir. 1993); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (per curiam); *Doleman v. Muncy*, 579 F.2d 1258, 1266 (4th Cir. 1978).

Mr. Boles fails to demonstrate he did not have a full and fair opportunity to litigate his Fourth Amendment claim in the state court proceedings. The record before the Court demonstrates Mr. Boles had a procedural opportunity to litigate his Fourth Amendment claim in state court and that he took advantage of that opportunity. In particular, Mr. Boles raised the Fourth Amendment claim in a motion to suppress, the trial court held a hearing on the motion to suppress, and he raised a claim on appeal challenging the warrantless arrest. Mr. Boles also fails to demonstrate the state courts did not make colorable application of the correct Fourth Amendment standards. Therefore, consideration of claim four is barred by *Stone*. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (*Stone* bar applied when the state courts "thoughtfully considered the facts underlying [the] Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent").

Ultimately, Mr. Boles' real argument with respect to claim four is a substantive disagreement with the resolution of the Fourth Amendment claim by the state court. However, disagreement with a state court's resolution of a Fourth Amendment claim is not enough to overcome the bar in *Stone*. *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting petitioner's argument that the state court misapplied Fourth Amendment doctrine in reaching wrong conclusions about probable cause

because that was not the proper question under *Stone*); *see also Pickens v. Workman*, 373 F. App'x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for full and fair litigation is not defeated merely because a participant might prefer a different outcome"). Thus, Mr. Boles is not entitled to relief with respect to claim four.

**E. Claim Five**

Finally, claim five is a cumulative error claim. Mr. Boles describes the cumulative error claim in his Reply as follows:

> Cumulative error is not just errors that would not have much of an impact standing alone. But, as mentioned in *Estelle v. McGuire*, 502 U.S. 62 (1991)[,] and *Esquibel v. Rice*, 13 F.3d 1430 (10th Cir. 1994), the Court needs to consider the jury instructions and the whole court record. Looking at everything from warrantless arrest, no bail, bail so high it is no bail, negligent police investigations missing important exculpatory evidence, a bad public defender, no counsel, deal with alleged victim by [the] prosecutor, overly restrictive and errant court rulings, inadequate jury instructions with prohibited mandatory presumption and lack of critical "specific intent" element, both failure to disclose and suppression of exculpatory evidence, and not allowing me to present a complete defense[.] They did not even have sufficient evidence to convict on every element had every element been presented. Should there be any doubt, much less grave doubt? There has been a fundamental miscarriage of justice. A complete miscarriage of justice.

(ECF No. 31 at p.31.) The Colorado Court of Appeals rejected Mr. Boles' cumulative error claim on direct appeal "because we have determined that no errors occurred." (ECF No. 9-3 at p.15.)

Respondents argue claim five is not a cognizable habeas corpus claim because there is no clearly established federal law to apply to a claim of cumulative error. In

support of this argument Respondents cite the Tenth Circuit's decision in *Hooks v. Workman*, 689 F.3d 1148, 1195 n.24 (10th Cir. 2012), which recognized a circuit spit on the issue but declined to definitively decide the issue. More recently, the Tenth Circuit addressed the merits of a cumulative error claim in a habeas corpus action, noting that "[w]e have held that when a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable because Supreme Court authority clearly establishes the right to a fair trial and due process." *Bush v. Carpenter*, 926 F.3d 644, 686 (10th Cir. 2019) (internal quotation marks omitted). At the same time, the panel in *Bush* questioned whether a cumulative error claim is cognizable.

> Although we are bound by Tenth Circuit precedent on this issue, we note, in passing, that the Supreme Court has never recognized the concept of cumulative error. And, because there is no "clearly established Federal law" on this issue, we question whether a state appellate court's rejection of a cumulative error argument can justify federal habeas relief under the standards outlined in § 2254(d).

*Id.* at n.16.

Even assuming cumulative error analysis is clearly established federal law to be applied in reviewing an application for a writ of habeas corpus, "the only otherwise harmless errors that can be aggregated [in the federal habeas context] are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted).

The Court has not found two or more constitutional errors at Mr. Boles' trial that would warrant a cumulative-error analysis. Mr. Boles' conclusory references to a plethora of alleged legal errors does not change that fact. Furthermore, Mr. Boles fails to demonstrate the state court's rejection of the cumulative error claim, which was premised on a determination that no errors occurred, was contrary to or an unreasonable application of clearly established federal law. As a result, he is not entitled to relief with respect to claim five.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Boles is not entitled to relief on any of his claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated this 4th day of June, 2021.

BY THE COURT:

_____
William J. Martínez
United States District Judge